1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16

| | |
|---|---|
| LUZ M. SALAZAR, | )    Case No. CV-05-3596 (JC) |
|                Plaintiff, | ) |
| | )    MEMORANDUM DECISION AND |
|     vs. | )    ORDER |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY | ) |
|             Defendant. | ) |

17
18
19
20
21
22
23
24
25
26
27
28

      Luz M. Salazar ("Plaintiff") brings this action seeking to vacate the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  Plaintiff asks for a remand to the Commissioner for further proceedings and a new decision.  The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.  This matter is before the Court on the parties' Joint Stipulation filed on January 26, 2006.  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

//
//

1

## I.   PROCEDURAL HISTORY

On February 13, 2003, Plaintiff filed an application for DIB under Title II of the Social Security Act.  (Administrative Record ("AR") 34).  Plaintiff alleged that she became unable to work beginning on March 5, 2002 due to depression, anxiety, high blood pressure, head and neck pain, and the lack of an ability to concentrate.  (AR 57).  The Commissioner denied Plaintiff's claims initially and upon reconsideration.  (AR 17).  Upon Plaintiff's request, Administrative Law Judge Robert K. Rogers, Jr. (the "ALJ") held a hearing on February 25, 2004 in San Bernardino, California.  (AR 14-23, 41, 262-89).  Plaintiff was represented by a non-attorney representative.  (AR 264).  At the ALJ's request, Plaintiff's representative submitted supplemental materials for the ALJ's consideration on March 23, 2004.  (AR 104-34, 219-23, 287-88).  On June 15, 2004, the ALJ issued a decision denying benefits.  (AR 14-23).  On July 20, 2004, Plaintiff, with the assistance of her current counsel, sought review of the ALJ's decision before the Appeals Council.  (AR 10-13).  On November 22, 2004, Plaintiff submitted additional materials for consideration by the Appeals Council.  (AR 224-61).  After considering, among other things, the additional material submitted by Plaintiff, the Appeals Council denied review on March 14, 2005.  (AR 5-8).  Therefore, the ALJ's decision constitutes the final decision of the Commissioner.  (AR 5).  Plaintiff subsequently commenced the instant action.

## II.   FACTUAL BACKGROUND

### A.   Summary of Evidence Presented to the ALJ

Plaintiff was born on May 6, 1959, and was forty-four years old at the time of the February 25, 2004 hearing before the ALJ.  (AR 34).  She completed six years of education in Mexico and has held jobs as both a file clerk and a glue operator at a foam factory.  (AR 58, 66).

Plaintiff began working as a file clerk in 1997.  (AR 166).  At some point, she came to be supervised by an individual who pressured her, harassed her, and

1  made ethnic slurs about her.  (AR 166).  Between 1998 and 1999, Plaintiff's

2  supervisor put a gun to her head and threatened Plaintiff and her son.  (AR 167).

3  She complained to her boss, but nothing was apparently done.  (AR 166-67).

4  Plaintiff finally went to see a doctor because she was anxious and felt she would

5  burst.  (AR 167).

6      From May 2, 2001 to May 4, 2001, Plaintiff was hospitalized at Community

7  Hospital of Huntington Park due to headaches and severe hypertension.  (AR 138-

8  160).  A physician controlled Plaintiff's hypertension and prescribed medication.

9  (AR 142, 145).   Plaintiff nonetheless continued to work at her job until March 4,

10 2002, when she was terminated.  (AR 57, 167, 181).

11     Dr. Maria E. Mayoral, a psychiatrist, initially examined Plaintiff at

12 Plaintiff's then counsel's request, on April 29, 2002, and issued a report on June

13 10, 2002.  (AR 165).  Dr. Mayoral described Plaintiff as a casually dressed,

14 somewhat overweight woman who exhibited anxiety in her very pressed speech.

15 (AR 166, 169).  She noted that Plaintiff's speech was clear, and that Plaintiff was

16 cooperative and pleasant.  (AR 169, 170).  Although Dr. Mayoral indicated that

17 Plaintiff's insight and judgment were somewhat impaired due to depression and

18 anxiety, she also noted that Plaintiff was alert and oriented to time, place,

19 situation, and person.  (AR 170).  Dr. Mayoral diagnosed Plaintiff with depression

20 not otherwise specified with anxiety "as manifested by severe anxiety, tension,

21 fears regarding the future, feelings of humiliation, crying spells, difficulty falling

22 asleep, and middle-of-the-night awakenings."  (AR 170).  Dr. Mayoral concluded

23 that, from a psychiatric point of view, Plaintiff was acutely, totally, temporarily

24 disabled.  (AR 170).

25     On December 14, 2002, Dr. Mayoral completed a periodic report which

26 reflects that Plaintiff was instructed to remain off work until January 15, 2003.

27 (AR 173).  On January 15, 2003, Dr. Mayoral authored a letter in which she

28 opined that plaintiff's psychiatric status was one of "acute, total temporarily [sic]

3

1   disability." (AR 103).  Dr. Mayoral concluded that due to Plaintiff's psychiatric

2   status, she would not be able to return to work for at least a year.  (AR 103).  On

3   January 29, 2003, Dr. Mayoral completed another periodic report which reflects

4   that Plaintiff was instructed to remain off work until March 15, 2003.  (AR 172).

5       On March 13, 2003, Dr. Mayoral completed a Mental Disorder

6   Questionnaire form in which she diagnosed Plaintiff as having depression (not

7   otherwise specified) with anxiety.  (AR 100).  She reported that Plaintiff was

8   depressed and anxious, lacked the ability to concentrate, was forgetful, had

9   difficulty sleeping, had crying spells, suffered from mood swings, and had very

10  pressured speech.  (AR 97, 98).  She noted that Plaintiff was generally pleasant

11  and could understand simple written and oral instructions, though she would

12  forget them after a few minutes.  (AR 98, 99).  She indicated that Plaintiff could

13  perform daily activities with help and that although Plaintiff could interact

14  socially, she did not feel like visiting or calling friends.  (AR 99).  Dr. Mayoral

15  further indicated that Plaintiff's mental impairments limited her to a no stress work

16  environment.  (AR 100).

17      Plaintiff underwent mental and physical consultative examinations at the

18  Multispecialty Disability Evaluation Clinic on April 7, 2003, and April 9, 2003,

19  respectively.  (AR 175-83).  Dr. N. Paculdo, an adult and child psychiatrist,

20  diagnosed Plaintiff with anxiety, not otherwise specified.  Dr. Paculdo observed

21  that Plaintiff was casually dressed, had good grooming and hygiene, and was

22  heavy set, with no acute distress.  (AR 181-82).  He noted that Plaintiff's mood

23  and affect were anxious, but that Plaintiff denied mood swings.  (AR 182).  He

24  pointed out that she was alert, cooperative, and oriented to time, place, person and

25  situation.  (AR 182).  Dr. Paculdo observed that Plaintiff's speech was clear and

26  that she responded to questions appropriately.  (AR 182).  He further found that

27  Plaintiff's memory was intact, her attention span was good, and her concentration,

28  insight, and judgment were fair.  (AR 182).  Dr. Paculdo opined that Plaintiff

4

could sustain focused attention, complete everyday routines, and follow and understand simple instructions, and that she had the ability to adapt to stressors common to a work environment. (AR 182). He further indicated that Plaintiff could take care of her own grooming and hygiene, and that she was able to interact and communicate with family members and friends. (AR 182).

With respect to Plaintiff's physical condition, Dr. Steven A. Moskowitz, an internist, diagnosed Plaintiff with hypertension and left elbow pain and tenderness. (AR 178). Although not listed as one of his "diagnoses," Dr. Moskowitz also observed that Plaintiff's left wrist and forearm were tender. (AR 177). He noted that Plaintiff was overweight and in no acute distress, and that she had not been experiencing any shortness of breath. (AR 175, 176). He observed that Plaintiff was alert, and heard and spoke normally. (AR 178). Plaintiff told Dr. Moskowitz that there were no recent emotional problems. (AR 178). Dr. Moskowitz observed that Plaintiff's mental status at the time appeared normal, and that she was taking Zoloft, among other prescription drugs. (AR 176, 178). He opined that Plaintiff was able to lift forty pounds occasionally and thirty pounds frequently and that repetitive bending and stooping were not impaired. (AR 178).

On April 20, 2003, Dr. C.H. Dudley, a non-examining state agency physician, conducted a psychiatric review of Plaintiff's mental condition from March 2002 to April 30, 2003. (AR 185-198). Dr. Dudley concluded that Plaintiff had an anxiety disorder which was not severe and which caused mild to no functional limitations. (AR 185, 190, 195).

On February 25, 2004, Plaintiff and a vocational expert, Susan Green, testified before the ALJ at a hearing. (AR 264). Plaintiff testified as follows: While she was working as a file clerk in 1999, her former supervisor held a gun to her head, threatened her, and made inappropriate ethnic slurs. (AR 270). She worked as a file clerk for another three years, but became very depressed and anxious due to the incident. (AR 270-71). She suffered from loss of memory,

concentration, and sleep, and experienced weight gain.  (AR 271-73).  She was nervous most days, cried easily, and experienced mood swings.  (AR 274-75).  She was not able to finish a task that she started, could not cook, sometimes did laundry, sometimes did dishes, sometimes vacuumed, and went grocery shopping with her daughter and husband.  (AR 276-77).

The vocational expert testified as follows:  Plaintiff's past relevant work as a file clerk was classified as light, though Plaintiff had performed it at a medium exertion level.  (AR 286).  There were 105,391 file clerk jobs at a light exertion level in the national economy.  (AR 286-87).

At the conclusion of the testimony, the ALJ noted that the record was "poorly developed."  (AR 287).  He directed Plaintiff's representative to interview Plaintiff about who was treating her and when, and to develop the record by submitting updated medical records that were not already in the file from Dr. Mayoral and the doctors treating Plaintiff's hypertension.  (AR 287).  The ALJ further directed Plaintiff's representative to submit additional evidence regarding the gun threat incident.  (AR 287-88).  The ALJ advised Plaintiff's representative that he had until March 24, 2004, to produce the additional records, and that if additional time was needed, Plaintiff's representative could submit a request explaining why and proposing a new specific deadline.  (AR 287).

On or about March 23, 2004, Plaintiff's representative submitted supplemental materials for the ALJ's consideration consisting of Plaintiff's deposition transcript relating to the gun incident, and Dr. Mayoral's March 16, 2004 mental assessment of Plaintiff.  (AR 104-34, 219-23).  In the March 16, 2004 assessment, Dr. Mayoral opined that Plaintiff was moderately to markedly limited in almost all work-related mental activities.  (AR 220-23).[1]  The assessment further reflects that Plaintiff had memory loss and difficulty concentrating, was

---

[1]The general work-related areas included understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  (AR 220-23).

crying and irritable, spoke in a loud pressed voice, and was easily angered.  (AR 222).

### B.   Supplemental Materials Submitted to the Appeals Council

Plaintiff, through her current counsel, submitted additional materials to the Appeals Council in conjunction with her request for review of the ALJ's decision. The materials include medical records dated May 1, 2001, through July 30, 2004, from, among others, Dr. Oscar Stezovsky, who treated Plaintiff's hypertension, and Dr. Mayoral.  (AR 228-52).   The new documents from Dr. Mayoral consisted of:  (1) a July 29, 2004 assessment reflecting the results of a July 27, 2004 examination of Plaintiff (AR 248-52); and (2) periodic reports dated July 31, 2002, September 15, 2002, November 1, 2002, and April 2, 2003,  (AR 253, 259-61).[2]   The July 29 assessment reflects that Plaintiff continued to suffer from depression (not otherwise specified) with anxiety.  (AR 250).  Dr. Mayoral described Plaintiff as a casually dressed, reasonably groomed woman who exhibited anxiety in her loud and pressured speech.  (AR 250).  She noted that Plaintiff felt sad and depressed, and that she suffered from crying spells, irritability, and unresolved anger.  (AR 249).  She further noted that Plaintiff suffered from severe sleep disorders, as well as appetite disorders, and that Plaintiff had lost more than ten pounds.  (AR 249).  Dr. Mayoral observed that Plaintiff's speech was clear, and that she was alert and oriented to time, place, situation, and person.  (AR 250).  She administered two psychological tests which pointed to Plaintiff having mild and moderate levels of depression.  (AR 250).  Dr. Mayoral rated Plaintiff's overall work function impairment as moderate.  (AR 251-52).

---

[2]Although Plaintiff's counsel also submitted to the Appeals Council, a copy of a March 13, 2003, mental disorder questionnaire completed by Dr. Mayoral, this form was a duplicate of the questionnairre previously presented to the ALJ, and thus did not constitute new evidence. (AR 97-101, 254-58).

1    The newly provided periodic reports collectively reflect that Plaintiff was

2    instructed to remain off-work from July 31, 2002 to December 15, 2002, and from

3    April 2, 2003 to July 15, 2003.[3]

4    **III.   APPLICABLE LEGAL STANDARDS**

5    To qualify for disability benefits, a claimant must show that she is unable to

6    engage in any substantial gainful activity by reason of a medically determinable

7    physical or mental impairment which can be expected to result in death or which

8    has lasted or can be expected to last for a continuous period of at least twelve

9    months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

10   § 423(d)(1)(A)).  The impairment must render the claimant incapable of

11   performing the work she previously performed and incapable of performing any

12   other substantial gainful employment that exists in the national economy.  Tackett

13   v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

14   In assessing whether a claimant is disabled, an ALJ is to follow a five-step

15   sequential evaluation process:

16   (1)   Is the claimant presently engaged in substantial gainful activity?  If

17         so, the claimant is not disabled.  If not, proceed to step two.

18   (2)   Is the claimant's alleged impairment sufficiently severe to limit

19         her ability to work?  If not, the claimant is not disabled.  If so,

20         proceed to step three.

21   (3)   Does the claimant's impairment, or combination of

22         impairments, meet or equal an impairment listed in 20 C.F.R.

23         Part 404, Subpart P, Appendix 1?  If so, the claimant is

24         disabled.  If not, proceed to step four.

---

26
27   [3]Periodic reports originally provided to the ALJ reflected that Plaintiff was also instructed
     to remain off work from December 14, 2002 to January 15, 2003, and from January 29, 2003, to
28   March 15, 2003.  (AR 172, 173).

(4)     Does the claimant possess the residual functional capacity ("RFC") to perform her past relevant work?[4]  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimaint is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006)(citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).  In addition, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Bustamante, 262 F.3d at 954; see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)(ALJ has special duty to fully and fairly develop record and to assure that claimant's interests are considered).

If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show, at step five, that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience.  Tackett, 180 F.3d at 1100 (citing 20 C.F.R. § 404.1560(b)(3).  The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20

---

[4]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

1  C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").   Id.
2  When a claimant has both exertional (strength-related) and nonexertional
3  limitations, the Grids are inapplicable and the ALJ must take the testimony of a
4  vocational expert.   Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing
5  Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## IV.   THE ALJ AND APPEALS COUNCIL DECISIONS

### A.   The ALJ's Decision

8       The ALJ issued a written decision on June 15, 2004.  (AR 17-23).  He noted
9  that both Plaintiff and the vocational expert appeared and testified at the February
10  25, 2004 hearing.  (AR 17).  The ALJ concluded "[u]pon reviewing all of the
11  evidence of record," that Plaintiff was not "disabled" within the meaning of the
12  Social Security Act, and therefore was not entitled to DIB pursuant to the Social
13  Security Act.  (AR 18, 22).

14       At the first step of the sequential evaluation, the ALJ found that Plaintiff
15  had not engaged in substantial gainful activity since the alleged onset of disability.
16  (AR 22).

17       At the second step of the analysis, the ALJ found Plaintiff's hypertension to
18  be the only impairment sufficiently severe to limit her ability to work.  (AR 21-
19  22).  The ALJ determined that there was insufficient evidence in the record to find
20  that Plaintiff's diagnosed anxiety disorder had resulted in any significant
21  limitations on the claimant's work related activities.  (AR 20).  In reaching the
22  latter conclusion, the ALJ relied upon Dr. Paculdo's opinion that Plaintiff's mental
23  impairment was non-severe.  (AR 20).  The ALJ noted that Dr. Paculdo's opinion
24  was consistent with that of the non-examining state agency physician (Dr.
25  Dudley).  (AR 20).

26       The ALJ declined to give Dr. Mayoral's opinion significant weight because
27  he found that her opinion was inconsistent with Plaintiff's scant treatment records
28  and findings and was based largely on Plaintiff's subjective complaints which the

10

ALJ did not find to be fully credible.  Specifically, the ALJ pointed to the following:  (1) although Dr. Mayoral indicated that Plaintiff was under her treatment, there was no actual evidence of treatment, such as treatment notes, in the record;[5] (2) Dr. Mayoral's initial June 10, 2002 report in which she indicated that Plaintiff was temporarily and totally disabled (as well as her subsequent reports in December 2002 and January 2003) provided no explanation of Plaintiff's work-related limitations; (3) despite Dr. Mayoral's March 16, 2004 opinion that Plaintiff was moderately to markedly limited in all work-related mental activities, the records provided did not reflect that Dr. Mayoral had seen or treated Plaintiff in the twelve preceding months; and (4) the only assessments supplied by or from Dr. Mayoral were based largely on Plaintiff's subjective complaints (which the ALJ later found not to be fully credible) and were inconsistent with the record when considered in its entirety.  The ALJ contrasted Dr. Mayoral's March 13, 2003 report, that Plaintiff suffered from mood swings, with Dr. Paculdo's April 7, 2003 report that Plaintiff stated that she did not have mood swings.  The ALJ further pointed to the fact that Dr. Mayoral indicated that Plaintiff was markedly limited in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, but that Dr. Paculdo observed that Plaintiff was neatly dressed, hygienic, and cooperative.  (AR 20-21).

At the third step of the analysis, the ALJ found that Plaintiff's severe hypertension did not meet nor medically equal a listed impairment.  (AR 22).

At the fourth step of the evaluation, the ALJ found that Plaintiff was capable of performing her past relevant work as a file clerk at a light residual functional capacity.  (AR 20, 22).

---

[5]Plaintiff indicates that Dr. Mayoral's periodic reports constituted her treatment notes. (Joint Statement at 11).

The ALJ expressly found that Plaintiff's allegations regarding her limitations were "not totally credible" based on some inconsistencies in her statements. (AR 21, 22). Specifically, the ALJ noted that her alleged significant anxiety, pain and other symptoms leading to disability were not fully credible because: (1) while Plaintiff alleged that she was in constant pain, all day long, her medications were not consistent with such debilitating pain – the strongest pain reliever she was taking was ibuprofen, and she was not prescribed any narcotic painkillers; (2) Plaintiff alleged that she suffered from shortness of breath in February 2003, but during an examination in April 2003, she denied having such a symptom; and (3) Plaintiff's activities of daily living as reported by Plaintiff, and as observed by a third party, also suggested an ability to perform some work – Plaintiff did some cleaning, laundry, ironing, and shopping, was able to assist her daughter in getting to school, and was able to visit with family and very close friends. (AR 21). The ALJ therefore concluded that although Plaintiff might experience some symptoms relating to her impairments, they were not so severe that they further limited her residual functional capacity. (AR 21).

Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, at any time through the date of the decision. (AR 22)

## B.   The Appeals Council's Decision

On March 14, 2005, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 5-9). It found that the supplemental information presented by Plaintiff through her new counsel, did not provide a basis for changing the ALJ's decision.

With respect to the additional materials submitted from Dr. Mayoral, the Council did not accord such evidence "controlling weight." (AR 6). First, the Council discussed the newly provided progress reports. It noted that such reports were cumulative, lacked mental status evaluations, and appeared only to contain a recitation of Plaintiff's allegations. (AR 6).

Second, the Council discussed Dr. Mayoral's July 2004 medical source statement. It noted that the medical source rated limitations contained therein were not consistent with the record or Dr. Mayoral's finding on mental status. (AR 6). It further noted that Dr. Mayoral did not provide clinical evidence to support the assessed limitations (reflected at AR 252). (AR 6). The Council observed that instead of providing "supporting data," Dr. Mayoral instructed the reader to "See History or Mental Status Examination," but did not discuss the evidence relevant to her conclusions. (AR 6).

The Council noted that although Dr. Mayoral indicated that Plaintiff's speech was loud and pressed and that she dwelled on fears, Dr. Mayoral also observed that Plaintiff was alert, oriented to time, place, situation and person, that her speech was clear, that her vocabulary was adequate, that there was no fragmentation of thought process or losses of association, that there were no delusions or hallucinations, and that her insight and judgment were "somewhat" impaired due to her anxiety and depression. (AR 6). The Council pointed out that in assessing Plaintiff's functional limitations, Dr. Mayoral considered in large part, Plaintiff's subjective complaints, which the ALJ found were not credible. (AR 6).

The Council further contrasted Dr. Mayoral's notes with those of Plaintiff's other treating physician, Dr. Stezovsky. It pointed out that although Dr. Mayoral indicated that Plaintiff had lost weight, Dr. Stezovsky's progress notes reflected that Plaintiff had continued to gain weight since the alleged onset of disability date. (AR 6). The Council further observed that while Dr. Mayoral noted signs of Plaintiff's severe depression and anxiety, Dr. Stezovksy's progress notes did not reference Plaintiff's reported symptoms after her alleged onset of disability date.[6] (AR 6).

---

[6]Dr. Stezovsky's March 1, 2003 progress notes do, however, reflect Plaintiff's "anxiety reaction." (AR 229).

1   The Appeals Council ultimately concluded that the information presented

2   by Plaintiff did not provide a basis for changing the ALJ's decision.  (AR 6).

3   **V.    STANDARD OF REVIEW**

4       Pursuant to 42 U.S.C. section 405(g), the district court may review the

5   Commissioner's decision to deny an applicant benefits.  The court may set aside a

6   denial of benefits only if it is not supported by substantial evidence or if it is based

7   on legal error.  Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) (citing

8   Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002)).  Substantial evidence is

9   "more than a mere scintilla but less than a preponderance; it is such relevant

10  evidence as a reasonable mind might accept as adequate to support a conclusion."

11  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003) (citing

12  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  The court is required to

13  review the record as a whole, and to consider both evidence that supports, and that

14  which detracts from the ALJ's conclusion.  Verduzco v. Apfel, 188 F.3d 1087,

15  1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

16  Where evidence is susceptible to more than one rational interpretation, it is the

17  ALJ's conclusion that must be upheld.  Burch, 400 F.3d at 679.  A decision of the

18  ALJ will not be reversed for errors that are harmless.  Id.

19      A reviewing court considers both the ALJ's decision and additional

20  evidence submitted to the Appeals Council in connection with an unsuccessful

21  request for review to determine whether the Commissioner's "final decision" is

22  supported by substantial evidence and free of legal error.  Ramirez v. Shalala, 8

23  F.3d 1449, 1451-52 (9th Cir. 1993) (citation omitted); 20 C.F.R. § 404.970(b)

24  (Appeals Council shall evaluate entire record, including new material evidence,

25  and shall review case if ALJ's actions, findings, or conclusions are contrary to

26  weight of evidence currently of record)); see also Harman v. Apfel, 211 F.3d 1172,

27  1180 (9th Cir. 2000) (reviewing court may properly consider additional materials

28

1  presented to Appeals Council because Council addressed materials in context of

2  denying request for review).

3  **VI.   DISCUSSION**[7]

4  Plaintiff contends that the ALJ erred by:  (1) not giving proper weight to

5  one of her treating physician's opinions; (2) finding that her anxiety impairment

6  was non-severe; and (3) not properly evaluating her credibility.

7  **A.   The ALJ properly weighed the treating physician's opinion**

8  Plaintiff contends that the ALJ improperly discounted the medical opinion

9  of her treating physician, Dr. Mayoral, because Dr. Mayoral's opinion is well-

10  supported and not inconsistent with other substantial evidence in the record.

11  (Joint Stipulation ("JS") 5-6).

12  In general, the opinion of a treating physician is entitled to greater weight

13  than that of a non-treating physician because the treating physician "is employed

14  to cure and has a greater opportunity to know and observe the patient as an

15  individual." Morgan v. Commissioner of Social Security Administration, 169

16  F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th

17  Cir. 1987)).  The treating physician's opinion is not, however, necessarily

18  conclusive as to either a physical condition or the ultimate issue of disability.

19  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v.

20  Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  When there is conflicting

21  medical evidence, the Secretary must determine credibility and resolve the

22  conflict.  Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002).  Where a

23  treating physician's opinion is not contradicted by another doctor, it may be

24  rejected only for clear and convincing reasons.  Connett v. Barnhart, 340 F.3d 871,

25  874 (9th Cir. 2003).  However, the ALJ can reject the opinion of a treating

26

27  _____

[7]As Plaintiff does not dispute the ALJ's findings regarding her alleged physical

28  impairments, the Court does not address such findings.

1  physician in favor of a conflicting opinion of another examining physician if the

2  ALJ makes findings setting forth specific, legitimate reasons for doing so that are

3  based on substantial evidence in the record.  Id. (citation and internal quotations

4  omitted); see also Magallanes, 881 F.2d at 751 (ALJ can meet burden by setting

5  out detailed and thorough summary of facts and conflicting clinical evidence,

6  stating his interpretation thereof, and making findings).  Moreover, the findings of

7  a nontreating, nonexamining physician can amount to substantial evidence so long

8  as other evidence in the record supports those findings.  Saelee v. Chater, 94 F.3d

9  520, 522 (9th Cir. 1996).

10       Here, the ALJ's and the Appeals Council's reasons for rejecting Dr.

11  Mayoral's opinions in favor of the conflicting opinion of Dr. Paculdo, are specific

12  and legitimate, and are supported by substantial evidence in the record.

13       First, the ALJ found that Dr. Mayoral's opinion that Plaintiff's anxiety

14  disorder resulted in marked limitations in her functional capacity was inconsistent

15  with Plaintiff's sparse treatment records and findings.[8]  (AR 20).  A treating

16

17       [8]Although Plaintiff takes the position that there was not "a dearth of evidence in the file,"
18  she nonetheless argues that if the ALJ was dissatisfied with Dr. Mayoral's "scant" records, he
    had a duty to develop the record by subpoenaing Dr. Mayoral, submitting questions to her, or
19  continuing the hearing to supplement the record. (JS 5, 11).  The ALJ in a social security case
    has an independent duty to fully and fairly develop the record.  See Tonapetyan v. Halter, 242
20  F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).  This duty extends to the represented as well
    as to the unrepresented claimant.  Id.  The ALJ's duty to develop the record "is triggered only
21  when there is ambiguous evidence or when the record is inadequate to allow for proper
22  evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation
    omitted).  The ALJ may discharge this duty in several ways, including: subpoenaing the
23  claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing,
24  or keeping the record open after the hearing to allow supplementation of the record.  Tonapetyan
    (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) and Smolen v. Chater, 80 F.3d 1273,
25  1288 (9th Cir. 1996)).  Here, the ALJ found that the record was poorly developed and therefore
26  left it open for thirty days to allow Plaintiff to submit additional medical records from her
    treating physicians and to request additional time, if necessary.  (AR 287).  Plaintiff submitted an
27  additional mental assessment from Dr. Mayoral during the open period, but did not request an

28                                                                      (continued...)

16

doctor's opinion about a claimant's functional limitations can be discounted if the opinion is unsupported by the doctor's own treatment notes.  See Connett, 340 F.3d at 875; see also Saelee, 94 F.3d at 522 (variance between physician's opinion and his own treatment notes may be used to deem opinion untrustworthy).  The ALJ provided specific and legitimate examples to support his conclusion.  He noted that while Dr. Mayoral's June 10, 2002 report indicated that Plaintiff was temporarily or totally disabled, she did not explain Plaintiff's work-related limitations.  (AR 20).  The ALJ noted that Dr. Mayoral repeated this assessment in December 2002 and January 2003.  (AR 20).  The ALJ also noted that on March 13, 2003, Dr. Mayoral opined in a Mental Disorder Questionnaire form that Plaintiff had problems with concentration, persistence, and pace requirements of work and needed an environment entirely void of stress.  (AR 20).  The ALJ then noted that although Dr. Mayoral opined on March 16, 2004 that Plaintiff was moderately to markedly limited in all work-related mental activities, there was no

///

///

///

///

---

[8](...continued)
extension to offer additional documents thereafter.  (AR 219-23).  The ALJ considered the mental assessment and discussed it in his decision.  (AR 20-21).  As such, although the ALJ triggered his duty to gather additional information upon his finding that the record was inadequate, he fulfilled this duty by keeping the record open after the hearing to allow supplementation of the record.  To place any greater obligation on the ALJ under the circumstances of this case would be tantamount to shifting the initial burden of proof from Plaintiff to the Commissioner.  See Mayes, 276 F.3d at 459.  Moreover, even now, Plaintiff has failed to demonstrate that Dr. Mayoral could have supplied any additional evidence that might have altered the ALJ's or the Appeals Council's conclusions.  In light of Plaintiff's statement that Dr. Mayoral's period reports constituted her treatment notes, it appears that aside from the additional records submitted to and considered by the Appeals Council, there were no additional records to be had.  (JS 11).  Accordingly, the ALJ fulfilled his duty to fully and fairly develop the record; no duty to further develop the record arose here.

1    indication in the records provided that Dr. Mayoral had seen or treated Plaintiff in

2    the intervening twelve months.[9]  (AR 20).

3         Second, the ALJ concluded that it appeared that Dr. Mayoral's opinion was

4    largely based on Plaintiff's subjective complaints, which the ALJ found were not

5    credible.[10]  The ALJ may disregard a treating physician's opinion that was

6    premised on claimant's subjective complaints if the ALJ has properly discounted

7    such complaints.  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)

8    (citing Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)).  As discussed below,

9    the ALJ properly discredited Plaintiff's subjective complaints and therefore, his

10   finding was permissible.

11        Third, the ALJ pointed to inconsistencies in Plaintiff's reported statements

12   and conduct as reflected in Dr. Mayoral's versus Dr. Paculdo's reports.  The ALJ

13   noted that on March 13, 2003, Dr. Mayoral reported that Plaintiff suffered from

14   mood swings, but on April 7, 2003, Plaintiff denied that she experienced mood

15   swings to Dr. Paculdo.  (AR 20-21, 98, 182).  Furthermore, while Dr. Mayoral

16   reported that Plaintiff was markedly limited in her ability to maintain socially

17   appropriate behavior and to adhere to basic standards of neatness and cleanliness,

18   Dr. Paculdo observed that Plaintiff was cooperative, neatly dressed and hygienic.

19   (AR 21-22).

20

21

22        [9]As noted below, at least one of the periodic reports later provided to the Appeals Council
      does reflect that Dr. Mayoral saw Plaintiff during the year preceding the March 16, 2004 report.
23    However, the Appeals Council concluded that said report, like the other periodic reports, was
      cumulative, did not contain a mental status evaluation, and appeared to be a recitation of
24    Plaintiff's allegations.  (AR 6).

25

26        [10]Plaintiff argues that the ALJ cited no evidence to show that Dr. Mayoral's opinion was
      based largely on Plaintiff's subjective complaints as opposed to her observations of Plaintiff over
27    an extended period of time. (JS 6).  As the Appeals Council noted, many of Dr. Mayoral's
      reports appeared to be recitations of Plaintiff's allegations.  The substance of Dr. Mayoral's
28    reports further support the inference made by the ALJ.  Where evidence is susceptible to more
      than one rational interpretation, it is the ALJ's conclusion that must be upheld.  Burch, 400 F.3d
      at 679.

1    Finally, it should be noted that the Appeals Council considered the

2    additional materials, including Dr. Mayoral's periodic reports, narrative report,

3    and medical source statement, that Plaintiff submitted subsequent to the ALJ's

4    decision.  The Appeals Council found the additional materials did not provide a

5    basis for changing the ALJ's decision.  (AR 6).  It provided specific and legitimate

6    reasons for disregarding Dr. Mayoral's opinion upon its review and consideration

7    of the additional materials.

8        First, although one of the periodic reports was dated April 2, 2003, which

9    indicates that Dr. Mayoral had, in fact, seen Plaintiff during the twelve months

10   prior to her last assessment, the Appeals Council found that all the additional

11   periodic reports were cumulative to the record and did not contain mental status

12   evaluations.  Id.[11]  The Appeals Council noted that the reports appeared to be a

13   recitation of Plaintiff's allegations.  Id.

14       Second, the Appeals Council noted that although Dr. Mayoral's narrative

15   report contained a mental status evaluation, the evaluation did not support her

16   assessment that Plaintiff suffered from  moderate to marked functional capacity

17   limitations.  Id.  The Council also provided specific examples of internal

18   inconsistencies in Dr. Mayoral's reports.  While Dr. Mayoral reported that

19   Plaintiff's speech was loud and pressed and that Plaintiff dwelled on fears, she

20   also found that Plaintiff was alert and oriented to time, place and person.  Id.  Dr.

21   Mayoral further reported that Plaintiff's speech was clear, her vocabulary was

22   adequate and Plaintiff's insight and judgment were only "somewhat" impaired due

23   to her anxiety and depression.  Id.

24   _____

25       [11]Although the Appeals Council identified only three periodic reports, the record
26   indicates that Plaintiff actually submitted four additional periodic reports to the Appeals Council.
     (See AR 253, 259-261).  Since all four periodic reports are cumulative and do not contain mental
27   status evaluations, any error by the the Appeals Council in referring to three, rather than four
     such reports, was harmless.  See Batson v. Commissioner of the Social Security Administration,
28   359 F.3d 1190, 1197 (9th Cir. 2004) (applying harmless error standard); see also Stout v.
     Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)
     (discussing contours of application of harmless error standard in social security cases).

Finally, the Appeals Council indicated that Dr. Mayoral's findings were inconsistent with the findings of another of Plaintiff's own treating physicians – Dr. Stezovksy.  For example, although Dr. Mayoral reported that Plaintiff lost more than ten pounds, Dr. Stezovsky's progress notes indicated that Plaintiff continued to gain weight – a fact borne out by Plaintiff's own testimony.  (AR 228-31, 249).[12]

Accordingly, both the Appeals Council and the ALJ provided specific and legitimate reasons for disregarding Dr. Mayoral's opinion that were supported by substantial evidence in the record.[13]

## B.    The ALJ Properly Concluded that Plaintiff's Mental Impairment Was Not Severe

Plaintiff contends that the ALJ erred in failing to find her anxiety disorder a severe impairment.  (JS 12).

_____

[12]Contrary to the Appeals Council's finding, Dr. Stezovsky's progress notes do, in fact, reference Plaintiff's anxiety reaction on March 1, 2003 – a date after Plaintiff's alleged disability onset date. (AR 6, 229).  Nevertheless, as substantial evidence supports the ALJ's rejection of Dr. Mayoral's opinion, the Appeals Council's error was harmless.  See Batson, 359 F.3d at 1197.

[13]To the extent Plaintiff also argues that the ALJ's decision was not supported by substantial evidence, this Court disagrees. Dr. Paculdo performed a psychiatric evaluation of Plaintiff on April 7, 2003.  (AR 181-183).  Based on his own independent clinical findings, Dr. Paculdo diagnosed Plaintiff with an anxiety disorder not otherwise specified.  (AR 183).  He opined that although Plaintiff's affect and mood were anxious, she could sustain focused attention, complete everyday routine, and understand simple instructions.  (AR 182).  Moreover, he concluded that Plaintiff had the ability to adapt to stresses common to work environment.  Id. The ALJ also relied upon the evaluation of state agency physician, Dr. Dudley who assessed Plaintiff's mental impairment and found it to be non-severe.  (AR 20).  "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." Thomas, 278 F.3d at 957.  Here, Dr. Dudley's medical opinion was consistent with Dr. Paculdo's opinion which was based on independent clinical findings.  Dr. Dudley conducted a longitudinal assessment of Plaintiff's mental condition from March 2002 to April 30, 2003 and concluded that although Plaintiff had an anxiety disorder, her psychiatric impairment was not severe and caused no specific limitations in activities of daily living and difficulties in maintaining social functions, and only mild limitations in difficulties in maintaining concentration, persistence, or pace.  (AR at 185, 190, 195).

1  At step two of the sequential evaluation process, an impairment or a

2  combination of impairments may be found not medically severe only if evidence

3  clearly establishes a slight abnormality that has no more than minimal effect on an

4  individual's ability to work.  Webb, 433 F.3d at 687.  To determine whether or not

5  an impairment is severe, the ALJ must determine whether a claimant's impairment

6  or combination of impairments significantly limits his or her physical or mental

7  ability to do "basic work activities."  Id.; see also 20 C.F.R. §§ 404.1521(a),

8  416.921(a).  "Basic work activities are defined as including such capabilities as

9  use of judgment, 20 C.F.R. § 404.1521(b)(4); responding appropriately to

10  supervision, co-workers and usual work situations, 20 C.F.R. § 404.1521(b)(5);

11  and dealing with changes in a routine work setting, 20 C.F.R. § 404.1521(b)(6)."

12  Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001).

13  Here, the ALJ properly relied on the opinions of Drs. Paculdo and Dudley in

14  finding that Plaintiff's mental impairment was not severe.  Thomas, 278 F.3d at

15  957.  As discussed above, Dr. Paculdo found that Plaintiff's mental impairment

16  did not impair her ability to work and Dr. Dudley explicitly concluded Plaintiff's

17  mental impairment was not severe.  (AR at 241, 263, 265).  As such, substantial

18  evidence supports the ALJ's finding that Plaintiff's did not suffer from a severe

19  mental impairment.[14]

20  ## C.    The ALJ Properly Evaluated Plaintiff's Credibility

21  Plaintiff contends the ALJ failed properly to evaluate her credibility and

22  failed to consider her hearing testimony.  (JS 17).

23  Once a disability claimant produces evidence of an underlying physical or

24  mental impairment that is reasonably likely to be the source of her subjective

25

26  [14]For the reasons discussed earlier, it was not error for the ALJ to rely upon the opinions

27  of Drs. Paculdo and Dudley, as opposed to the contradictory opinion of Dr. Mayoral.  Nor was it
error for the ALJ to rely upon mental health specialists, such as Drs. Paculdo and Dudley, in

28  assessing the severity of Plaintiff's mental condition, as opposed to non-mental health specialists,
such as Dr. Stezovsky and Dr. Alfonso Roger.

1    symptoms, the adjudicator is required to consider all subjective complaints as to

2    the severity of the symptoms.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

3    2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also

4    20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms

5    are evaluated).  Although the ALJ may then disregard the subjective complaints he

6    considers not credible, he must provide specific, cogent reasons for doing so.

7    Tonapetyan, 242 F.3d at 1148; Greger v. Barnhart, 2006 WL 2684753, *2 (9th Cir.

8    September 20, 2006).  In the absence of evidence of malingering, an ALJ may not

9    dismiss the subjective testimony of a claimant without providing clear and

10   convincing reasons.  Moisa, 367 F.3d at 885.  The ALJ's credibility findings "must

11   be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the

12   claimant's testimony on permissible grounds and did not arbitrarily discredit the

13   claimant's testimony."  Id.  The ALJ may consider at least the following factors

14   when weighing the claimant's credibility: a claimant's reputation for truthfulness,

15   inconsistencies either in a claimant's testimony or between her testimony and her

16   conduct, a claimant's daily activities, her work record, and testimony from

17   physicians and third parties concerning the nature, severity, and effect of the

18   symptoms of which a claimant complains.  Thomas, 278 F.3d at 959 (9th Cir.

19   2002) (citation omitted).  If the ALJ's interpretation of the claimant's testimony is

20   reasonable and is supported by substantial evidence, it is not the court's role to

21   "second-guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

22          Here, the ALJ presented specific findings with clear and convincing reasons

23   to discount Plaintiff's subjective complaints.

24          The ALJ first found that Plaintiff's physician prescribed conservative

25   medical treatment in light of the alleged severity of her physical condition.  A

26   claimant's conservative course of medical care can constitute a legitimate reason

27   upon which the ALJ properly may discredit claimant's credibility.  Meanel v.

28   Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (explaining that the ALJ properly

considered, as part of his credibility evaluation, the treating physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating" pain alleged, and her "minimal, conservative treatment") (citing Bunnell, 947 F.2d at 346), see Fair, 885 F. 2d at 604 (holding that the ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained).

Plaintiff alleged that she was in constant pain, all day long, for at least six years which prevented her from resting and yet the strongest pain medication her physician prescribed for her was one 600 milligram tablet of ibuprofen per day. (AR 21, 41, 103). Plaintiff invites the Court to consider other possible reasons why her physician did not prescribe stronger medication for her severe pain. (JS 22). However, since the ALJ's finding was a reasonable one and was supported by substantial evidence, the Court will not second-guess it. See Rollins, 261 F.3d at 857.

Next, the ALJ noted that Plaintiff alleged she suffered from shortness of breath in February 2003, but in April 2003, she denied having such a symptom. (AR 94, 175). An ALJ may rely on a claimant's presentation of conflicting information regarding her allegations. See Thomas, 278 F.3d at 959 (holding that the ALJ did not err in using the claimant's conflicting statements about her alcohol and drug use to discredit her testimony) (citing Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999)). Thus, the ALJ's finding was permissible.

Finally, the ALJ determined that Plaintiff was less than fully credible because her daily activities suggested a greater functional capacity than Plaintiff admitted. The ALJ noted that Plaintiff should have been able to perform some work because she reported she did some cleaning, laundry, ironing, and shopping. (AR 21). The ALJ further noted that Plaintiff was able to assist her daughter in getting to school and to visit family and very close friends. Id. Moreover,

23

1   Plaintiff appears to have been able to care for her granddaughter while her son was

2   at work.  (AR 88).  Although the evidence of Plaintiff's daily activities may also

3   admit of an interpretation more favorable to her, the ALJ's interpretation was

4   rational, and "[w]e must uphold the ALJ's decision where the evidence is

5   susceptible to more than one rational interpretation."  Burch, 400 F.3d at 680-681

6   (citing Magallanes, 881 F.2d at 750).

7        Plaintiff contends that the ALJ erred by failing to summarize and judge her

8   testimony in his written decision because "what he failed to discuss he obviously

9   failed to consider."  (JS 17, 21).  In interpreting the evidence and developing the

10  record, the ALJ does not need to discuss every piece of evidence.  Howard ex rel.

11  Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted).

12  Further, the ALJ's failure to cite specific evidence does not necessarily indicate

13  that it was not considered.  Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).

14       Here, although the ALJ's credibility findings refer generally to "Plaintiff's

15  allegations," the ALJ elsewhere indicated that Plaintiff's testimony was in the

16  record and that he had considered everything in the record.  (AR 17-18, 22).

17  Moreover, the Court notes that Plaintiff's testimony was duplicative of allegations

18  she made elsewhere in the record.  Plaintiff summarizes her testimony as follows:

19          Plaintiff testified a supervisor at her job put a gun to her head in 1999 and

20          threatened her and her son.  She complained to her boss, but nothing was

21          done, and continued to work for three more years.  She became very

22          depressed, fearful, had trouble concentrating, developed high blood

23          pressure, and ultimately saw a physician, Dr. Mayoral.  (AR 269-71).  She

24          had disturbance in sleep, and appetite (she gained 20-30 pounds) and was

25          on Zoloft for depression.  Most of the time she was very upset and could not

26          control her thoughts.  She cried frequently, and some days she could not

27          start a task or could not finish.  Her daughter reminded her to take her

28          medication because of her forgetfulness.  (AR 273-78).

24

1   (JS 17-18).  Plaintiff's testimony reiterated facts which were already in the record.

2   Dr. Mayoral's June 10, 2002 medical report throughly discussed the incident

3   during which Plaintiff's supervisor allegedly held a gun to Plaintiff's head.  (AR

4   166-67).  Dr. Mayoral also noted Plaintiff's symptoms and allegations, as set forth

5   above, in her responses to the Mental Disorder Questionnaire.  (AR 91-101).

6   Plaintiff also reported such symptoms in her Daily Activities Questionnaire.  (AR

7   85-89; 97-100).  Since the ALJ specifically referenced Dr. Mayoral's June 10,

8   2002 medical report and her Mental Disorder Questionnaire form in rejecting Dr.

9   Mayoral's opinion, there is no doubt that he reviewed and considered the contents

10  of such documents.  (AR 20).  Furthermore, the ALJ cited to the Daily Activities

11  Questionnaire in evaluating Plaintiff's credibility.  (AR 21).  As such, given (i) the

12  ALJ's general references to the existence of Plaintiff's testimony and having

13  reviewed everything in the record; (ii) the ALJ's specific references to Dr.

14  Mayoral's findings and Plaintiff's allegations set forth in Dr. Mayoral's June 10,

15  2002 medical report, the Mental Disorder Questionnaire form, and the Daily

16  Activities Questionnaire; and (iii) the duplication between Plaintiff's testimony

17  and the other evidence in the record, this court concludes that the ALJ did in fact

18  consider Plaintiff's testimony in assessing her credibility.[15]

19         Although Plaintiff provided evidence of a medical impairment that might

20  reasonably be expected to give rise to her complaints, the record provides

21  substantial evidence in support of the ALJ's decision to reject her subjective

22  complaints.  Accordingly, based on the clear, convincing and specific reasons for

23  discounting Plaintiff's credibility, the Court concludes that the ALJ properly

24  assessed her credibility.

25

26          [15]Plaintiff notes that the ALJ did not ask her a single question and that he had a duty to
27  develop the record as necessary to assess her credibility.  (JS 17-18 ).  However, Plaintiff's
    representative thoroughly inquired about Plaintiff's physical and mental condition.  The record
28  does not reflect that her testimony was ambiguous or that it provided an inadequate basis upon
    which to assess her credibility, particularly in light of the other evidence in the record.

1

**VII.   CONCLUSION**

2      IT THEREFORE IS ORDERED that Judgment be entered affirming the

3 decision of the Commissioner and dismissing the action with prejudice.

4 DATED:      September 25, 2006

5

6                    _____/s/_____

7                    JACQUELINE CHOOLJIAN
                     UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28